IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## MIDDLE DIVISION.

NASHVILLE, . . . . . . . . . DECEMBER TERM, 1884

THE STATE *v.* M. T. POLK, *et al.*

1. BONDS, OFFCIAL. *Treasurer. Sureties.* The bond, which the statute requires the treasurer of the State to give, is a joint and several bond, each obligor becoming bound for the entire penalty.

2. SAME. *Same. Same.* But if the treasurer execute a bond, which is accepted, binding each of the sureties for only an aliquot part of the penalty, the sureties cannot be held liable beyond the terms of the contract.

3. SAME. *Same. Same.* If the treasurer execute a bond more than a year after the commencement of his term of office, which is accepted, containing no words of relation, the sureties will only be liable for such funds as the treasurer then had in his hands, and such as were afterwards received by him during the time he continues in the discharge of the duties of the office.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Chancellor.

ATTORNEY-GENERAL LEA and VERTREES & VERTREES for the State.

COLYAR, MARKS & CHILDRESS, DEMOSS & MALONE, JOHN RUHM, N. N. COX, WEBSTER & TAYLOR, and McDOWELL, for defendants.

COOPER, J., delivered the opinion of the court.

Bill filed May 12, 1883, by the State against M. T. Polk, late Treasurer of the State, and the sureties on his official bond of May 20, 1882, for the recovery of such moneys as might be found due from the defendants severally to the State, by reason of the failure of M. T. Polk to properly account for and pay over to his successor in office funds which came to his hands in his official capacity as Treasurer. Polk died pending the litigation, and the suit has been revived against W. L. Granberry as the administrator of his estate. Upon final hearing, the Chancellor rendered a decree in favor of the State against Granberry, as administrator, for $419,768.45, being the full amount of Polk's defalcation, with interest. But he found that the State was only entitled to recover from the sureties the sum of $39,111.82, and that the sureties had paid this sum to the State in the new issue of the Bank of Tennessee. He therefore gave a decree against the defendants for the costs, and the State appealed.

M. T. Polk was elected Treasurer of the State for

three successive terms of two years each, continuing in office from February 7, 1877, to January 5, 1883, when he absconded and left the State. He was elected in January, 1877, 1879 and 1881, on the last occasion for a term of two years, beginning January 15, 1881. The only bond given by him after this last election was executed by him and the. defendants, his sureties, on May 20, 1882. It is agreed that Polk's defalcation, between the date of his last election and May 20, 1882, amounted to more than $100,000, exclusive of certain United States bonds and coupons amounting to $84,287.50. And it is also agreed that the defalcation after May 20, 1882, after allowing certain specified credits and calculating interest, amounted to $39,111.82, which has been paid by the sureties mentioned in the agreed statement of facts, in the new issue of the Bank of Tennessee.

The bond of May 20, 1882, is in the words and figures following, to-wit:

STATE OF TENNESSEE,                              NASHVILLE, TENNESSEE,
  DAVIDSON COUNTY.                                     MAY 20, 1882.

Know all men by these presents, that Marshall T. Polk, as principal, is held and firmly bound to the State of Tennessee in the penal sum of one hundred thousand dollars ($100,000), and that W. M. Duncan, James K. Polk, R. P. Cole, A. R. Duncan, W. Morrow, J. E. R. Carpenter, A. S. Horsley, Max Sax, F. T. P. Allison and Will Polk, as sureties for the said Marshall T. Polk, are bound, severally, to the State of Tennessee each in the penal sum of ten thousand dollars and no further, to the payment of which the parties aforesaid bind themselves, their heirs, executors and assigns as aforesaid. The conditions of this obligation are, that if the said Marshall T. Polk shall perform all the duties enjoined on him by law to be performed, and shall faithfully account for and pay over all money which shall be received from time to time as Treasurer of Tennessee, and shall deliver safely to his successor in office all books, vouchers, account

and effects whatever, and all moneys which shall come into his hands as Treasurer aforesaid, then this obligation shall be null and void, otherwise to remain in full force and effect, binding said Marshall T. Polk in the full amount, and each surety to the extent of ten thousand dollars, and no further.

By the Code, section 222, the Treasurer of the State is elected by a joint vote of both Houses of the General Assembly, and holds his office for the term of two years, and until his successor is elected and qualified. By section 224 he is required to enter into bond, with ten or more sureties, in the sum of one hundred thousand dollars, payable to the State of Tennessee, and conditioned as set out in the bond of May 20, 1882. The bond is required to be acknowledged before a judicial officer, by whom its acknowledgment and sufficiency are to be certified, and the Treasurer is thereupon to take a prescribed oath of office. The bond in controversy was acknowledged and certified, and the Treasurer then took the oath of office.

The bond, which the statute requires the Treasurer to give, is manifestly a joint and several bond by the Treasurer and his sureties, each becoming bound for the entire penalty of the bond. This has been the general requirement of all official bonds in this State, and the uniform practice under our statutes. The bond before us does not, therefore, comply with the law. It undertakes in express terms to limit the liability of each surety to an aliquot part of the penalty, instead of extending the liability to the whole penalty as it should have done. . Upon common law

principles it is clear that the surety cannot be held bound beyond the terms of the bond, for the obvious reason that persons can only be held liable by the contract which they have actually entered into: *Nichol* v. *McCombs,* 2 Yer., 83; *United States* v. *Knight,* 14 Pet., 301, 314. An express statute has in one instance been held to extend the liability of the principal and sureties on a bond beyond its terms: *Ogg* v. *Leinart,* 1 Heis., 40. But there is no such statutory provision in relation to bonds of the character of the bond before us. By the Code, section 773, it is provided that whenever any officer, required by law to give an official bond, acts under a bond which is not in the penalty, payable or conditioned as prescribed by law, or is otherwise defective, such bond is not void, but stands in the place of the official bond, subject, on its condition being broken, to all the remedies which the person aggrieved might have maintained on the official bond of such officer, executed, approved and filed according to law. So also, by section 774, if any officer, who is required by law or in the course of judicial proceedings to give bond for the performance of an act or the discharge of duty, receives money or property upon the faith of such bond, he and his sureties are estopped to deny the validity of the bond, or the legality of the proceeding under which the money or property was obtained. But the first of these sections simply gives the same remedy, by motion or action, on the irregular bond as if it

had been entirely regular, " on its condition being broken," without extending the relief beyond the terms of the bond. And the other section is only in affirmance of the common law principle of estoppel, when money has been received on the faith of the bond, so as to hold the parties to its terms: *McLean* v. *State*, 8 Heis., 22, 255; *Galbraith* v. *Gaines*, 10 Lea, 568, 574. These sections do preclude the defendants, as is conceded by their learned counsel, from insisting that the bond is void for irregularity, or that it is not subject to the same remedies as a regular statutory bond. But we are unable to see any ground upon which the sureties to the bond can be held liable beyond the terms of their contract as plainly expressed on its face.

The only other question is, whether the bond is only binding on the sureties from the date of its execution, or relates back to the beginning of the Treasurer's term of office under the last election. In the former case, the liability of the sureties will be limited to the sum with which they were found chargeable by the chancellor. In the latter event, they will be liable to the extent of their respective obligations, for the defalcations of the Treasurer between the commencement of his last term of office and the date of the execution of the bond. This defalcation, it is agreed, as we have seen, amounted to over one hundred thousand dollars.

There can be no doubt, under our decisions, that

where an officer has been re-elected to office, and either has in hand, or receives, after he has qualified by giving bond, money belonging to the office, which he actually received, or would have been authorized to receive during his previous term, the sureties on the new bond would be liable therefor: *Yoakley* v. *King,* 10 Lea, 67; *State, ex rel.* v. *Cole,* 13 Lea, 367. It is equally true that the sureties on the new bond would not be liable for an actual defalcation committed during the previous term: *State, ex rel.* v. *Orr,* 12 Lea, 725; *Cox* v. *Hill,* 5 Lea, 147. The common law rule is, moreover, that the obligation of the sureties of a public officer for the faithful appropriation of money which he collected before they executed the bond, can only exist when the money was in his hands as the bailee of the government at the time of the execution of the bond, unless the bond be retrospective in its terms. A previous wrongful appropriation of the money would convert his relation of bailee into that of defaulter: *Farrar* v. *United States,* 5 Pet., 373; *United States* v. *Boyd,* 15 Pet., 187; *Board of Education* v. *Fonda,* 77 N. Y., 350. Unless, therefore, our statutes regulating the execution of official bonds changes the rule, the sureties in the present case would only be liable for funds held by their principal as bailee at the date of their bond, or received afterwards; for there is nothing in the language of the bond of a retrospective character, and calling the attention of the sureties to the fact that they were binding themselves

for the past as well as the future acts of their principal during his last official term. The statutes most certainly contemplate a qualification of the officer by the execution of an official bond before entering upon the discharge of his duties. But if he neglects to comply with the law, and the proper officers fail to compel him, or afterwards fail to take a bond stipulating to cover the past as well as the future, it is impossible to see how the sureties can be held liable beyond the terms of their bond. The Code, section 771, does provide that every official bond executed under the Code is obligatory on the principal and sureties thereon for any breach of the condition during the time the officer continues in office, or in the discharge of any of the duties of such office. But the object of this provision seems to be to extend the liability beyond the term, so long as the officer is in the discharge of any of the duties of the office—the Constitution and statute continuing him in office until his successor is elected and qualified. And the liability is "for any breach of the condition" of the bond, bringing us back to the construction of its terms.

There is no error in the decree of the chancellor, and it must be affirmed with costs.