# PEOPLES BANK v. ELIZABETHTON TRUST CO. et al.—130 S. W. (2d), 989.

Eastern Section.   February 11, 1939.

Petition for Certiorari denied by Supreme Court, July 1, 1939.

Price & Price, of Johnson City, for appellants.
Vines, Hawkins & Bryant, of Johnson City, for appellee.

McAMIS, J.   The appeal in this case involves the liability of the Fidelity and Casualty Company of New York as surety on the

guardianship bond of Elizabethton Trust Company. The Chancellor held nugatory an express provision of the bond that the surety should not be liable for defaults of the guardian prior to the date of the bond and decreed a recovery to the full penalty, if necessary, to make good the guardian's defaults whether occurring before or after the date of the bond.

The Elizabethton Trust Company was appointed guardian of Arthur A. Cable, a non compos World War Veteran, by the County Court of Carter County in the year 1928. A bond in the sum of $8,000 with personal sureties was regularly executed and filed. At the August 1930 term the bond was renewed in the penalty of $15,000. This bond was also signed by personal sureties who, it appears, are now insolvent.

In December 1932 the United States Veteran's Bureau wrote the guardian advising that it held a fund due the ward amounting to over $3,000, stating that it was the policy of the Bureau to discourage as far as possible the giving of personal sureties on guardianship bonds of veterans and that this fund would be paid over to the guardian upon the execution and filing of a bond with a solvent surety company as surety thereon. To meet this requirement of the Bureau the bond in question, in the penalty of $10,000 with the Fidelity and Casualty Company of New York as surety, was executed and filed on February 21, 1933. The bond contains the following preamble and statement of its intended scope and purpose:

"Whereas the above bound Elizabethton Trust Company was on the 17th day of July, 1928, appointed Guardian of Arthur A. Cable, an incompetent, and qualified as said Guardian by filing personal bond with the Court, and

"Whereas certain funds are about to come into the hands of the said Elizabethton Trust Company, as Guardian, from the United States Veterans Bureau and the Court having decided that the present bond is not sufficient to cover the funds about to be received; this bond is filed to cover said funds and such other funds as might come into the hands of the Principal hereof after the date of filing and acceptance of this bond.

"But it is a condition of this bond, and it is agreed and accepted as such by all parties concerned, that it is not and shall not be construed to be retroactive; that it does not supersede any other bond; and that it shall be binding upon the acts of the Principal hereof only from the date of filing and acceptance by the Court."

The first assignment of error is that the Chancellor erred in overriding the quoted provision of the bond undertaking to limit the liability of the surety to future defaults of the guardian and providing in express terms that it was not to be construed as retroactive. As applied to a guardian's bond the question presented is one of first impression in this State.

The Uniform Veterans' Guardianship Act (Code, Section 8548) provides that the bond of guardians for veterans shall be in the form and be conditioned as required of guardians appointed under the guardianship laws of this State and that the court shall have power from time to time to require the guardian to file an additional bond.

Section 8477 of the Code provides that guardians appointed by the court shall furnish bond conditioned upon the faithful discharge of the duties of guardian "which condition shall include every default which a guardian can commit in his office."

Section 8483 provides: "Every guardian, at the time of exhibiting his biennial list or statement of his ward's estate, shall renew his bond in a penalty as above and with the same conditions as the original bond."

Numerous cases, apparently construing the latter section, hold that sureties on a renewal bond of the guardian are not only liable for defaults occurring before the renewal bond was executed but, as between the sureties on such renewal bond and the sureties on preceding bonds of the guardian, the sureties on the renewal bond become primarily liable for all defaults which occurred prior to the filing of the renewal bond. See notes William's Tennessee Code annotated (1934) following section 8483 above quoted.

Most, if not all, of these cases, with the exception of Odom v. Owen, 61 Tenn. (2 Baxt.), 446, deal with the liability of a surety upon regular biennial renewal bonds of a guardian or sureties upon bonds executed for the purpose of releasing, in one of the manners provided by law, former sureties upon the guardian's bond. So far as we have discovered none of these cases involved a bond given for the special purpose of covering funds about to be paid to the guardian containing an express provision that it should not be construed as given or accepted for the purpose of covering prior defaults of the guardian.

In Odom v. Owen, supra, a bill was filed in the Chancery Court for the purpose of selling a negro slave, the proceeds of which belonged to certain minors having a regular guardian. The Chancellor decreed that to insure "more and greater certainty" the guardian should give an additional bond with sufficient surety for double the amount received from the sale of the negro. Such a bond was executed. The funds were subsequently lost and it was held that the sureties on the two bonds became equally liable and the one making good the default was entitled to contribution from the other. The purpose of the second bond in that case was to all intents and purposes the same as the purpose of the bond in question, i. e., to cover funds about to be paid into the hands of the guardian but the question of prior defaults was not in any way involved. This is one of the cases followed by the Chancellor.

The Chancellor was of opinion that the bond here in question was to be treated as a statutory bond given, as we infer, under section 1841 because of one of the reasons enumerated under that statute or under Section 8486 under court order so requiring for one of the causes mentioned under that Section of the Code. Having determined that the bond should be treated as a statutory bond, the Chancellor was further of opinion that the attempted limitation upon the liability of the surety made it a defective statutory bond which, under section 1836 of the Code, is to be treated as regularly conditioned to answer for the defaults of the guardian whether occurring before or after the execution of the bond. Thus, in effect, the Chancellor read out of the bond the express contractual provision upon which the surety now relies.

We do not think the bond is properly to be treated as a statutory bond. There is no suggestion that the bond was proffered and accepted as a renewal bond or to supersede the liability of sureties desiring to be released or that it was required because of the death, insolvency or removal from the State of prior sureties on the guardian's bond, Code, sections 1841 and 8486. It does not appear that there was any attempt to make the requisition, section 1842, or serve notice, section 8486, required before these statutes may be invoked to require the guardian to furnish other sufficient sureties.

If, as we hold, the bond was not given for the purpose of complying with the statute, it becomes only a common law obligation and, being expressed in unambiguous language, will be construed according to the terms which the parties have used, in their plain and ordinary sense. Pacific Mut. Life Ins. Co. v. Hobbs, 168 Tenn., 690, 80 S. W. (2d), 662; State ex rel. v. American Surety Co. (Tenn. App.), 120 S. W. (2d), 967.

If the bond be treated as a statutory bond, a different question would be presented. But it would seem, under authority of State v. Polk, 82 Tenn. (14 Lea), 1, that section 1836 relating to informal defective bonds may not be given the effect of overriding an express condition of the bond. The same section of the Code was before the court in that case and the contention of the surety that his liability could not be extended beyond the terms of his contract was sustained.

In that case the bond was for the sum of $100,000 conditioned upon the principal accounting for all funds which should come into his hands as Treasurer of the State but the bond provided that each surety could be held only to the extent of $10,000. It was held that, although the statute required the Treasurer to give a joint and several bond, each surety becoming bound for the entire penalty of the bond, the sureties could not be held liable beyond the terms of their contract as plainly expressed on its face. See also Hardison

& Co. v. Yeaman, 115 Tenn., 639, 649, 651, 91 S. W., 1111, and Spears v. Sherman, 148 Tenn., 430-432, 256 S. W., 436.

The decree of the Chancellor will be modified to limit the liability of the Fidelity and Casualty Company as surety on the guardian's bond to defaults made after the execution and filing of the bond and the cause will be remanded for execution of the order of reference. Costs of appeal will be taxed to appellee. Costs below will abide the action of the Chancellor upon the remand.