STATE OF TENNESSEE ex rel. v. R. D. EVANS et al.
—334 S. W. (2d) 337.

Middle Section. December 4, 1959.

Certiorari Denied by Supreme Court April 6, 1960.

2

Jack Wilson, Assistant Attorney General, James M. Glasgow, Assistant Attorney General, for complainant.

Manier, Crouch & White, Nashville, for defendant Fireman's Fund Indemnity Co.

Howard, Davis, Boult & Hunt, Joseph G. Cummings and J. G. Lackey, Jr., Nashville, for defendant Employer's Liability Assurance Corp., Ltd.

SHRIVER, J. The parties will be referred to as they appeared in the Court below.

## I

This appeal involves a suit brought by the State of Tennessee to recover a shortage in the accounts at Brushy Mountain Prison where defendant R. D. Evans was responsible for the fiscal affairs of the prison.

A very clear and succinct statement of the case appears in the excellent brief filed on behalf of the appellant, State of Tennessee, which statement is as follows:

"The complainant, State of Tennessee, filed its original bill in the Chancery Court of Davidson County seeking to recover a shortage in the accounts of Brushy Mountain Prison in the amount of $21,-213.99 for the period extending from September 1, 1949 through April 25, 1956. The defendants named in the bill are R. D. Evans, accountant at Brushy Mountain Prison, Fireman's Fund Indemnity Company, Employer's Liability Assurance Corporation, Ltd., and Hartford Accident and Indemnity Company, bonding companies.

"The defendant, Hartford Accident and Indemnity Company tendered into court the sum of $10,000.00, the amount of its bond, which sum was accepted by

the State. That bonding company is not now involved in the suit.

"Thereafter, the State received $2,210.48 from the Tennessee State Retirement Board pursuant to an assignment which the defendant, R. D. Evans, had executed prior to the filing of the bill in this case.

"By reason of the payments referred to above, the State's total claim was reduced to $9,003.51, and at the trial before the Chancellor, the State sought to recover said sum from the defendants, R. D. Evans, Fireman's Fund Indemnity Company, and the Employer's Liability Assurance Corporation, Ltd.

"The Chancellor held that State was entitled to recover the sum of $9,003.51 from the defendant, R. D. Evans, and the sum of $2,486.63 from the defendant, Employer's Liability Assurance Corporation, Ltd. The Chancellor further held that the State was not entitled to recover against the Fireman's Fund Indemnity Company, and dismissed the bill as to that defendant. (Tr. 45, 48).

"The State has appealed and complains of all of said holding except that part which adjudged that the State was entitled to recover of the defendant, R. D. Evans, the sum of $9,003.51."

The Employer's Liability Assurance Corporation, Ltd., (hereinafter called Employer's) has also appealed and assigned errors on the ground that the bond executed by Employer's contained a provision that no suit, action or proceeding of any kind to recover on account of a loss under said bond should be brought after three years from

the cancellation of said bond, and that the instant suit was not brought within said three year period.

The main facts necessary for a consideration of the issues involved in the appeal of the State and of Employer's may be stated briefly as follows:

Defendant, R. D. Evans, was the accountant at Brushy Mountain Prison during the period in question, September 1, 1949 to April 25, 1956, being an employee of the Department of Institutions of Tennessee.

As accountant at the prison Evans was the chief fiscal officer charged with responsibility for the prison's books, records and monies. He received, deposited and disbursed the funds and otherwise handled the finances at the prison.

In keeping the records and handling the funds at the prison, Evans engaged in irregular and fraudulent practices which resulted in the shortage for which suit was brought by the State.

As summarized in the brief filed on behalf of the State, these propositions of fact appear in the record:

(1) The State of Tennessee sustained a loss in the amount of $21,213.99 during the period extending from September 1, 1949 to April 25, 1956.

(2) The employee, R. D. Evans, was responsible for the loss.

(3) The bond of the Fireman's Fund Indemnity Company was in force and effect from January 17, 1949 to January 17, 1952.

(4) The bond of Employer's Liability Assurance Corporation, Ltd., was in force and effect from January 17, 1952 to January 17, 1953.

(5) The loss for the total period covered by the bonds of Employer's and Fireman's Fund, January 17, 1949 to January 17, 1953, arrived at by apportionment, was in the amount of $6,762.73, being a commissary shortage of $4,276.10 for the total period of the two bonds, and a warrant shortage of $2,486.63 occurring during the effectual period of Employer's bond.

The entire commissary shortage was $4,486.69 and covered 44½ months extending over the period of Employer's bond, part of the period of Fireman's Fund and about three months of the Hartford bond period. Apportionment was arrived at by dividing the total shortage by 44½ and allocating to each of the three bonding companies the mathematical result obtained according to the number of months each bond ran.

Apportioning the loss between the Fireman's Fund and Employer's by dividing the commissary loss allocated to them of $4,276.10 by the number of months their respective bonds ran, regardless of the time when such loss actually occurred, (since the date of loss could not be ascertained) the State fixed the loss for the period covered by the bond of the Fireman's Fund Indemnity Company, January 17, 1949 to January 17, 1952, as $3,024.56, and the loss for the period covered by the bond of Employer's January 17, 1952 to January 17, 1953, as $1,251.54. Add to this the warrant shortage of $2,486.63 and we have $3,738.17 claimed as the shortage allocable to Employer's.

## II

### Assignments of Error

The State has filed three assignments of error as follows:

The Court erred:

"1. In failing to hold that the State of Tennessee sustained a loss in the amount [of] $3,024.56 during the period when the bond of the defendant, Fireman's Fund Indemnity Company, was in force and effect, and in dismissing the bill as to said defendant.

"2. In failing to hold that the State of Tennessee sustained a loss in the amount [of] $3,738.17 during the period when the bond of the defendant, Employer's Liability Assurance Corporation, Ltd., was in force and effect, and in adjudging that the State was entitled to recover only $2,486.63, from said defendant.

"3. The Chancellor erred in failing and refusing to hold that during the whole period when the bonds of the defendants, Fireman's Fund Indemnity Company and Employer's Liability Assurance Corporation, Ltd., were in force and effect, the State of Tennessee sustained a total loss in the amount of $6,762.-73, and that the defendant, Employer's Liability Assurance Corporation, Ltd., was legally liable under the provisions of its bond for said sum."

Counsel for Employer's has filed three assignments as follows:

"1. The Chancellor erred in overruling the defendant's, Employers' Group, plea that the bond

required suit to be brought within three years from the cancellation of the bond and that no such suit was brought within the three year period.

"2. The Chancellor erred in awarding judgment on behalf of the State and against the defendant Employers' Group.

"3. The Chancellor erred in holding that 'the State of Tennessee is not bound by the statutes of limitation in this case and no State official had authority to contract away this right.' "

## III

Counsel for Employer's in their well reasoned brief and argument state the decisive question involved in this appeal as follows:

"The Employers' Group became surety on a bond effective January 17, 1952, and terminated January 17, 1953. This bond was a public employee's honest blanket position bond agreeing to indemnify the State of Tennessee against any loss sustained through fraudulent or dishonest acts of the employees covered. The bond contains a provision (quoted in its entirety at page 7 hereinabove) which limits the time for bringing an action thereon to a period of three years from the cancellation of the bond. The present suit was brought approximately four years and nine months after cancellation of the bond. Indeed, Employers' Group had no notice of the claimed shortage until more than three years after cancellation of the bond.

"The controlling question raised by the two assignments of error of the Employers' Group (which

will be discussed together) is whether such contractual provision is a valid defense to the action brought by the State of Tennessee. If the contractual provision is valid, then the judgment against Employers' Group must be reversed and the suit dismissed.''

The provision in the bond of Employer's referred to hereinabove is as follows:

''Section 6. No suit, action or proceeding of any kind to recover on account of loss under this bond shall be brought after the expiration of three years from the cancellation of this bond as an entirety, provided, however, that if such limitation for bringing suit, action or proceeding is prohibited or made void by any law controlling the construction of this bond, such limitations shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.''

Employer's bond was terminated January 17, 1953 and the instant suit was filed October 15, 1957, which was more than three years after the termination of the bond.

The audit in question covered the period from September 1, 1949 to April 25, 1956 and disclosed a total shortage of $21,213.99. After Hartford Accident and Indemnity Company paid $10,000 on its bond, which was the limit of its liability, and which bond was in effect at the time the shortages were discovered, and after the Tennessee State Retirement Board paid $2,210.48 pursuant to an assignment which defendant Evans executed prior to the filing of the bill herein, the State's total claim was reduced to $9,003.51.

According to the proof the shortage for the period covered by the two bonds of Employers' Group and the

Fireman's Fund Indemnity Company which were involved in the trial below amounted to $6,762.73 which is composed of two classes of items. The first one is the commissary shortage of $4,276.10, for the total period of the two bonds, that is from January 17, 1949 to January 17, 1953. The second is the shortage represented by certain warrants deposited to replace other missing funds in the amount of $2,486.63.

The second item of loss was placed by the auditors as occurring during the effective date of the Employer's bond, that is, during the period from January 17, 1952 to January 17, 1953, hence, the Chancellor held Employer's liable to the State for this amount and rendered judgment thereon.

As is shown by the proof and frankly stated in the brief and argument of counsel for the State, the loss attributable to the commissary in the amount of $4,276.10 was established for the total period covered by the two bonds, that is of the Employers' Group bond and the Fireman's Fund Bond, while the loss attributable to the warrants in the amount of $2,486.63 was established to have been within the period of the Employer's bond.

Due to the dates when inventories and cash accounts had been made, the auditors could determine that the commissary loss occurred within the total period covered by the two bonds *but they could not, except by apportioning the loss, or prorating, place a definite part of the loss within the life of a particular bond.* Thus, as is stated by counsel for the State, the auditors were certain that the commissary loss occurred within the total period covered by the two bonds, hence, they apportioned the loss over the total period, and assigned to each bonding

company its proportionate share regardless of the fact that they could not fix any definite part of the loss as having occurred within the life of either bond.

By thus apportioning, it was determined that the part of the commissary shortage for which the Fireman's Fund Indemnity Company was liable was $3,024.66, which was its total liability.

It was, likewise, established that the Employer's proportionate share of the commissary shortage was $1,251.-54. This amount, together with Employer's liability on the warrants in the amount of $2,486.63, made its total liability $3,738.17, according to the insistence of the State.

On these facts the Chancellor held that, since the proof did not establish when the commissary loss occurred with respect to the bonds of the two defendants, Employer's and Fireman's Fund, and, since, as the Chancellor stated in his memorandum, the State admitted that if the bonding companies were to be held liable it must appear that the loss occurred during the period when the bonds were in force and effect, he dismissed as to the Fireman's Fund Indemnity Company, and held Employer's liable only on the warrant shortage of $2,486.63. It was from this decree that Employer's appealed.

Without discussing the theory of apportionment, we will pass to the question of the limitation set forth in the bond of Employer's hereinabove quoted, which provided that no action should be brought for any loss under the bond after the expiration of three years from its termination.

It is insisted by counsel for the State that the bond of Employer's is a "Statutory Bond" and that the con-

tractual limitation as to the bringing of suit is not effective.

Section 4-408, T. C. A., applies generally to fidelity bonds for officers and employees who handle State funds and provides that each Commissioner or head of a department, or any subordinate officer who may be required to handle State monies, shall give bond executed with a surety company authorized to do business within the State, which shall be in force during such official's term of office in an amount fixed by the Governor or the General Assembly and deemed to be adequate by the Treasurer to safeguard the State's funds.

Section 4-613, T. C. A., which applies to fidelity bonds for officers and employees of State Institutions who are charged with the custody of money or property, and which is the applicable section here, is as follows:

"The commissioner shall require the secretary and each officer and employee of every institution under his control, who may be charged with the custody or control of any money or property belonging to the state, to give bond with a surety company as surety, properly conditioned, and in such sum as may be fixed by the governor, treasurer, and comptroller, said bond when approved by the commissioner to be filed in the office of the secretary of state. The costs of making such bond shall be paid from the funds available for the department or the respective institutions."

There is much argument in the briefs of counsel for the respective parties as to what is a "Statutory Bond" and as to the particular definition that should be applied here. The mere designation of a bond as a "Statutory

Bond'' is not controlling, as we view the matter. While in one sense of the word the bond in question might be called a statutory bond because the statute hereinabove quoted calls for the execution of a bond on the part of any officer or employee of a state institution who is charged with custody of money or property belonging to the state. On the other hand, the definition of a ''Statutory Bond'', as referred to in a number of cases where bonds are discussed, would not apply since the bond in question here is not one whose terms and provisions are spelled out by statute.

In Peoples Bank v. Elizabethton Trust Co., 23 Tenn. App. 288, 130 S. W. (2d) 989, 991, this Court defined a statutory bond as one given for the purpose of complying with the statute.

It is significant to note that the bond here in question expressly provides, in section 7 thereof, that it is issued and accepted ''Upon condition that it shall not be construed to be a bond required by law''.

Another definition of a statutory bond as set out in some of the text authorities is, ''One authorized or required by statute'', and counsel for defendant Employer's admit that the bond herein involved is one which was authorized or required to be made by statute, but they point out that the bond, by its very terms, and in view of statute which authorized it to be made, is not a bond where the terms thereof are statutory.

We think it is a well established general rule that in the absence of a prohibitory statute, a contract provision is valid which limits the time for bringing suit, if a reasonable period of time is provided, and that the general statutes of limitations are not prohibitory of such

contractual provisions as between private individuals or corporations. See Annotations in 121 A. L. R. pp. 758-792.

■ As was said in J. R. Hale & Sons v. R. C. Stone Eng. Co., 14 Tenn. App. 461:

"That the parties could validly thus by contract restrict the periods of limitation of actions upon the bond is not open to question in this State. These were matters of contract not regulated by the terms of the statute of limitation."

We have a state statute (T. C. A. sec. 56-1112) which prohibits a provision in a life insurance policy limiting the time within which an action may be commenced to less than five years after the cause of action shall accrue but we have no such prohibitory statute regarding bonds of state employees.

But counsel for the State point out that Section 8-1921, T. C. A. provides as follows:

"Whenever any officer, required by law to give an official bond, acts under a bond which is not in the penalty, payable, or conditioned as prescribed by law, or is otherwise defective, such bond is not void, but stands in the place of the official bond, subject, on it's condition being broken, to all the remedies which the persons aggrieved might have maintained on the official bond of such officer, executed, approved, and filed according to law."

We must agree with counsel for defendants that this statute has not been given the interpretation learned counsel for the State give it, but has been given a contrary interpretation by our Courts.

Note 9 under T. C. A. Section 8-1921 says, "The sureties on an official bond cannot be held liable beyond the terms of their contract, as plainly expressed on its face." Citing several Tennessee decisions in support thereof.

State v. Polk, 82 Tenn. 1, was a suit by the state against a deceased State Treasurer's estate and the sureties on his official bond for failure to account for and pay over funds.

Under the statute he was required to give a bond with ten or more sureties in the sum of one hundred thousand dollars. The bond in express terms limited the liability of each surety to the proportionate part of the penalty instead of extending liability to the whole. The court construed the statute as requiring a joint and several bond, but held that the sureties were bound, not according to the terms of the bond which should have been given, but according to the terms of the bond actually given.

The opinion of the Court shows that the code section in question here was under consideration, it being referred to in the opinion as Code Section 773, but which is carried forward into T. C. A. at Section 8-1921.

The Court said that the bond which the statute required the Treasurer to give was manifestly a joint and several bond by the Treasurer and his sureties, each becoming bound for the entire penalty of the bond, which was the general requirement of all official bonds in the State and the uniform practice under our statutes. However, the Court said that the bond then before the Court did not comply with the law in that it undertook in express terms to limit the liability of each surety to an aliquot part of the penalty, instead of extending the liability to the whole penalty as it should have done. The Court con-

tinued by saying that upon common law principles it is clear that the surety cannot be held bound beyond the terms of the bond, for the obvious reason that persons can only be held liable by the contract which they have actually entered into. Citing Nichol v. McCombs, 10 Tenn. 83; United States v. Knight, 14 Pet. 301, 314, 10 L. Ed. 465. The Court went on to say that there was no statutory provision in relation to bonds of the character then under consideration but that by Code Sec. 773 it is provided that whenever an officer, required by law to give an official bond, acts under a bond which is not in the penalty, payable or conditioned as prescribed by law, or is otherwise defective, such bond is not void, but stands in the place of the official bond, subject, on its condition being broken, to all the remedies which the person aggrieved might have maintained on the official bond, of such officer, executed, approved and filed according to law. The Court also stated that by Section 774 of the Code, if any officer is required by law to give a bond for the performance of an act or discharge of duty, receives money or property upon the faith of such bond, he and his sureties are estopped to deny the validity of the bond, or the legality of the proceeding under which the money or property was obtained. The opinion then continues as follows:

"But the first of these sections simply gives the same remedy, by motion or action, on the irregular bond as if it had been entirely regular, 'on its condition being broken', without extending the relief beyond the terms of the bond. And the other section is only in affirmance of the common law principle of estoppel, when money had been received on the faith of the bond, so as to hold the parties to its terms:

McLean v. State, 8 Heis., 22, 255; Galbraith v. Gaines, 10 Lea, 568, 574. These sections do preclude the defendants, as is conceded by their learned counsel, from insisting that the bond is void for irregularity, or that it is not subject to the same remedies as a regular statutory bond. But we are unable to see any ground upon which the sureties to the bond can be held liable beyond the terms of their contract as plainly expressed on its face.''

Said case of State v. Polk, supra, was cited approvingly by the Supreme Court in the case of Spears v. Sherman, 148 Tenn. 430, 256 S. W. 436, in which case there was a surety on an appeal bond conditioned to pay all costs adjudged against an appellant. Notwithstanding that the applicable statute provided such a bond should be for costs, damages and interest, the surety was held liable only in accordance with the terms of his obligation.

In Peoples Bank v. Elizabethton Trust Co., 23 Tenn. App. 288, 130 S. W. (2d) 989, 991, this Court held that where an additional bond furnished by a guardian was not given for the purpose of complying with the statute, such bond was only a common law obligation and, being expressed in unambiguous language, its terms would be construed in their plain sense as used by the parties. The Court further held that if the bond was treated as a statutory bond, the statute relating to informal defective bonds (T. C. A. sec. 8-1921) could not be given the effect of overriding an express condition of the bond. The Court further said;

"If the bond be treated as a statutory bond, a different question would be presented. But it would seem, under authority of State v. Polk, 14 Lea 1, 82

Tenn. 1, that Section 1836 relating to informal defective bonds may not be given the effect of overriding an express condition of the bond. The same Section of the Code was before the court in that case and the contention of the surety that his liability could not be extended beyond the terms of his contract was sustained.''

 If the conditions of a bond are statutory in that they are set forth in the statute requiring the bond, of course, no administrative official has authority to waive these conditions. In the case at bar the statute provides for a bond with a surety company ''Properly conditioned * * * said bond when approved by the commissioner to be filed'' etc. Thus, the conditions are not prescribed by statute and, in this sense it is not a ''Statutory bond''.

It is insisted by the counsel for the State that the statute of limitations does not apply to actions brought by the State unless the statute expressly so provides and that public officials are without authority to waive the defense of the statute of limitations and therefore, the officers of the State have no authority to make a contract which includes a provision limiting the time for bringing suit. This is the view that the Chancellor apparently took.

 While it is true that the State, unless named, is not bound by a statute of limitations, and when the statute has run in favor of the government, whether the State or a subordinate governmental entity, public officials have no power to waive the bar of the statute. However, in the instant case we are not concerned with a statute of limitations which has run in favor of the State but with a contract which limits the time for bringing suit.

This distinction is one which should be made and has been noted by our Courts in a number of cases. We think it a valid distinction to be made here.

In United States v. Seaboard Air Line Ry. Co., 4 Cir., 1927, 22 F. (2d) 113, 115, in an opinion by Judge Parker, the Court observed that the fact that the government is a party to the bill of lading does not prevent the application of the rule that matters referred to by a contract will be treated as though incorporated therein; for the rule is well settled that in construction and interpretation of government contracts the same general rules apply as in the case of contracts between individuals.

The opinion states;

"Is it binding upon the government? We think that it is. We recognize the rule, of course, that statutes of limitation do not apply to the government unless expressly made applicable to it, and that the government is not barred by laches of its officers, however gross, in a suit brought by it as a sovereign to enforce a public right or to assert a public interest. But these doctrines have no application here. The limitation invoked by the railway company is not statutory, but contractual, and the claim of the government is barred, not because of laches of its officers, but because of the express provisions of a contract into which its officers have entered * * *".

See also United States v. Chicago, R. I. & P. R. Co., 5 Cir., 200 F. (2d) 263; United States v. The South Star, D. C. 1953, 115 F. Supp. 102, affirmed 2 Cir., 210 F. (2d) 44, and Grace Line, Inc. v. United States, D. C. 1956, 144 F. Supp. 548.

In 49 Am. Jur. p. 275 under the title "States", sec. 62, it is said:

"As to its contract, the state should be held to the same rules and principles of construction and application of contract provisions as govern private persons and corporations in contracting with each other. * * * "

At page 285, Sec. 74, it is said:

"The rights and responsibilities of a state under an ordinary business contract are, with few exceptions, the same as those of individuals."

■ We believe that the limitation as to the time of bringing suit as set out in the bond of the defendant Employer's is a valid provision and that the suit by the State to recover under said bond was instituted too late.

It results that the assignments of error of defendant, appellant, Employer's, are sustained.

This being true, it is unnecessary for us to discuss further the question of apportionment which the learned Chancellor found to be an improper method of arriving at liability on the part of the two defendants.

It follows that, as to the result reached by the Chancellor in rendering judgment against R. D. Evans and in dismissing the case against the Fireman's Fund Indemnity Company, his decree is affirmed, but, the judgment against Employer's is reversed and the cause against said Employer's Liability Assurance Corporation, Ltd., is dismissed at the cost of the State.

Affirmed in part, reversed in part.

Felts and Hickerson, JJ., concur.