IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 29, 2017 Session

## QUEEN CITY PASTRY, LLC v. BAKERY TECHNOLOGY ENTERPRISES, LLC

**Appeal from the Circuit Court for Maury County**
**No. 15651    Stella L. Hargrove, Judge**
_____

**No. M2017-00112-COA-R3-CV**
_____

The purchaser of automated cake-line equipment filed this action against the seller alleging breach of contract, breach of express and implied warranties, negligent misrepresentation, and violation of the Tennessee Consumer Protection Act.  On the seller's motion, the trial court dismissed the complaint as untimely.  Because we conclude that the complaint was filed after the applicable limitations periods, either as agreed to by the parties or set by statute, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Colin B. Calhoun and M. Ben Moore II, Nashville, Tennessee, for the appellant, Queen City Pastry, LLC.

Dalton M. Mounger, Charles M. Molder, and Kori Bledsoe Jones, Columbia, Tennessee, for the appellee, Bakery Technology Enterprises, LLC.

## OPINION

### I.

Queen City Pastry, LLC makes, sells, and distributes a line of specialty cakes and related bakery products.  In 2010, Queen City decided to automate its cake-baking process.  To that end, the company contacted Bakery Technology Enterprises, LLC about purchasing equipment for an automated cake line.  Representatives of Bakery

Technology later visited Queen City's facility to view its operations and to discuss its needs.

On March 25, 2011, Bakery Technology sent Queen City a proposal that included prices and specifications for equipment for an automated cake line. The proposal gave Queen City the option of either a used or a new oven and the option of adding an auto-depan system as part of the line. Significantly, the proposal was also subject to eight pages of terms and conditions, discussed further below.

Queen City accepted the proposal, choosing an automated line with a used oven and adding the auto-depan system. And a representative of Queen City signed the proposal. On May 20, 2012, Bakery Technology delivered the used oven and other related equipment for which Queen City paid in excess of $550,000.

According to Queen City, after delivery, it discovered that the oven was designed primarily for baking cookies or crackers, not specialty cakes, and that the other equipment it purchased from Bakery Technology was inappropriate. But Queen City did not reject the goods or notify Bakery Technology that the delivered goods were defective. Instead, the company requested additional information,[1] which Queen City claimed Bakery Technology never provided.

On July 30, 2014, Queen City filed suit against Bakery Technology in North Carolina, but after the case was removed to federal court, the United States District Court for the Western District of North Carolina dismissed the case for improper venue. One year after the dismissal, Queen City refiled in the Circuit Court for Maury County, Tennessee. The complaint alleged breach of contract, negligent misrepresentation, breach of express and implied warranties, and violation of the Tennessee Consumer Protection Act. *See* Tenn. Code Ann. §§ 47-18-101 to -131 (2013 & Supp. 2017).

Under Tennessee Rule of Civil Procedure 12.02(6), Bakery Technology moved to dismiss the case for failure to state a claim upon which relief could be granted. The trial court determined that Queen City's claims for relief were based in contract and that the parties' contract gave the buyer fifteen months to file a lawsuit against the seller. Because Queen City's original complaint was filed after the time allowed, the court granted the motion to dismiss.

---

[1] Queen City requested additional information about "electrical wiring, gas piping and connection details along with automated line coordination for interrelated equipment and functions so that Queen City could determine if said oven and related equipment could or would meet its special needs."

## II.

A Rule 12.02(6) motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Thus, "[t]he resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id.* Consideration may also be given to exhibits attached to the complaint. *Ivy v. Tenn. Dep't of Corr.*, No. M2001-01219-COA-R3-CV, 2003 WL 22383613, at *3 (Tenn. Ct. App. Oct. 20, 2003); *see West v. Schofield*, 468 S.W.3d 482, 488-89 (Tenn. 2015) (applying standard of review for motion to dismiss when trial court considered the amended complaint and the attached exhibits).

We "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). The complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999) (citing *Riggs v. Burson*, 941 S.W.2d 44, 47 (Tenn. 1997)). Making such a determination presents a question of law. Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id.* (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

### A.

The trial court's resolution of the motion to dismiss rested on the parties' agreement. As noted above, Bakery Technology's proposal was subject to terms and conditions, which limited both its liability and Queen City's remedies. In pertinent part, the terms and conditions provided as follows:

> VI. <u>Claims and Remedies</u>
> 1. . . . Shipments shall conclusively be deemed accepted by BUYER unless written notice of rejection is received by SELLER within three (3) business days after arrival of goods at their shipping destination, which notice the parties agree is reasonable. Once the goods have been accepted, Buyer's sole and exclusive remedy with respect to such goods, including the right to revoke acceptance, shall be limited to claims under Seller's Warranty, if any, as set forth herein.
>
>    . . . .
> 6. Any lawsuit against SELLER must be brought within three (3) months following the expiration of the Warranty period or be forever barred.
>
>    . . . .

3

VIII.  Warranty

1.  Warranty is 12 months on parts and labor based on normal wear and tear. . . .

   . . . .

5.   Within the stated warranty period, SELLER, at its sole option, will repair or replace any goods or parts thereof which prove defective under conditions of normal use and service at no charge to BUYER. . . .

6.  Where applicable, the capacity of the equipment to be furnished is set forth in the Equipment Specifications section of Seller's proposal.  If the equipment is unable to achieve the specified capacity, despite a duplication of the conditions stated in the proposal, SELLER will, at its sole option, either replace or modify the equipment to achieve the specified capacity. . . .

7.  Any claims under this Warranty shall be promptly made by BUYER in writing and BUYER shall provide to SELLER details of any defects, deficiencies or problems with the goods sold to BUYER. . . .

   . . . .

13.   EXCEPT AS PROVIDED IN SECTION XI, THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESSED OR IMPLIED[.]   SELLER DISCLAIMS ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

   . . . .

XI.  Limitation of Liability

   . . . .

2.  Upon acceptance of the goods, as provided in Section VI, paragraph 1, Seller's liability is expressly limited to its obligations under Seller's Warranty contained in Sections VIII and IX.[2]


Tennessee law favors "allowing competent parties to strike their own bargains." *Ellis v. Pauline S. Sprouse Residuary Tr.*, 280 S.W.3d 806, 814 (Tenn. 2009); *see also* Tenn. Code Ann. § 47-1-302 cmt. 1 (Supp. 2017) (emphasizing the role of freedom of contract in commercial transactions).  Courts are not concerned with the wisdom or folly of voluntary agreements.  *Chapman Drug Co. v. Chapman*, 341 S.W.2d 392, 398 (Tenn. 1960).  Our "role is to enforce an unambiguous contract as it is written unless the contract is being challenged based on fraud or mistake."  *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002).

---

[2] Section IX of the terms and conditions concerned patent and trademark claims that are inapplicable here.

B.

Both parties agree that this transaction is governed by Article 2 of the Uniform Commercial Code as adopted in Tennessee. *See* Tenn. Code Ann. §§ 47-2-101 to -725. (2001 & Supp. 2017). Queen City alleged that the oven and related equipment did not conform to the contract. When a seller tenders nonconforming goods, Article 2 allows the buyer to accept or reject those goods in whole or in part. *Id.* § 47-2-601 (2001). If the buyer chooses to accept the goods, rejection is no longer an option, but other remedies are available under Article 2 unless limited by the parties' agreement. *Id.* §§ 47-2-607(2), -719(1) (2001).

Bakery Technology delivered the oven and related equipment on May 20, 2012. Under the parties' agreement, Queen City had three days after delivery to notify Bakery Technology that it was rejecting the goods. *See id.* § 47-2-602 cmt. 1 (2001) ("Contract provisions limiting the time for rejection . . . are effective if the time set gives the buyer a reasonable time for discovery of defects."). But Queen City did not reject the goods or notify Bakery Technology that the goods were nonconforming. Queen City also paid for the delivered goods. Under both Article 2 and the terms of the contract, Queen City accepted the goods. *See id.* § 47-2-606 (2001).

As provided by the parties' agreement, once Queen City accepted the goods, its "sole and exclusive remedy with respect to such goods, including the right to revoke acceptance, [was] limited to claims under Seller's Warranty, if any, as set forth [in the terms and conditions]." *See id.* § 47-2-719(1) (allowing parties to limit available remedies by agreement). The agreed upon terms and conditions included an express warranty to repair or replace defective goods for a period of twelve months from acceptance. After accepting the nonconforming goods, Queen City's only avenue of redress was to make a warranty claim.

The parties' agreement further provided that "[a]ny lawsuit against [Bakery Technology] must be brought within three (3) months following the expiration of the Warranty period." Thus, Queen City was required to file a lawsuit within fifteen months after acceptance of the delivered goods. *See Certain Underwriter's at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002) ("[A] contractual limitations period begins to run upon accrual of the cause of action."); Tenn. Code Ann. § 47-2-725(2) (2001) (specifying when a cause of action accrues under Article 2); *Goot v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at *12 (Tenn. Ct. App. Nov. 9, 2005) (noting that the "discovery rule cannot supercede a contractually agreed upon limitations period as along as the agreed upon period affords a reasonable time within which to file suit"). It is undisputed that Queen City's original complaint was filed after expiration of the fifteen-month period.

5

Contractual provisions limiting the time allowed for filing suit are enforceable in Tennessee. *See, e.g.*, *Guthrie v. Conn. Indem. Ass'n*, 49 S.W. 829, 830 (Tenn. 1899); *MR Hotels, LLC v. LLW Architects, Inc.*, No. M2015-00840-COA-R9-CV, 2016 WL 4070050, at *5 (Tenn. Ct. App. July 28, 2016); *Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 581 (Tenn. Ct. App. 2014); *Desgro v. Pack*, No. E2012-00918-COA-R3-CV, 2013 WL 84899, at *4 (Tenn. Ct. App. Jan. 8, 2013); *Skaan v. Fed. Express Corp.*, No. W2011-01807-COA-R3-CV, 2012 WL 6212891, at *9 (Tenn. Ct. App. Dec. 13, 2012); *State v. Evans*, 334 S.W.2d 337, 342 (Tenn. Ct. App. 1959). Unless prohibited by statute, contracting parties may agree to shorten the statutory limitation period as long as the chosen time period is reasonable. *Evans*, 334 S.W.2d at 342.

Queen City does not cite to any statute prohibiting this limitation found in the terms and conditions, and we have not found one. Article 2 permits buyers and sellers to "reduce the period of limitation to not less than one (1) year." Tenn. Code Ann. § 47-2-725(1). And, although Queen City does not make the claim that fifteen months is an unreasonable time, given that Article 2 allows a one-year limitation period, we conclude that fifteen months is reasonable.

Instead, Queen City argues that the limitation period is unenforceable because the contract may be rescinded for failure of consideration.[3] We disagree. Failure of

---

[3] Rescission is a common law remedy available as an alternative to a breach of contract claim. *See Isaacs v. Bokor*, 566 S.W.2d 532, 537 (Tenn. 1978). But Article 2 preempts common law remedies that are inconsistent with its provisions or its purposes and policies. The official comments explain that

> the Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

Tenn. Code Ann. § 47-1-103 cmt. 2 (Supp. 2017). "[T]he prevailing view now is that when the UCC provides a comprehensive remedy for the parties to a transaction, common-law and other non-Code claims and remedies should be barred." *C-Wood Lumber Co. v. Wayne Cty. Bank*, 233 S.W.3d 263, 281 (Tenn. Ct. App. 2007) (concluding that Articles 3 and 4 provide a nearly comprehensive scheme "governing the endorsement, negotiation, collection, and payment of checks" displacing the common law actions at issue); *see Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297, 302 (Tenn. Ct. App. 1984) (concluding that buyers' claim for rescission based on seller's misrepresentation of the quality of the aircraft sold was controlled by provisions of Article 2). Here, allowing rescission based on a claim that the seller failed to provide equipment suitable for Queen City's special needs when the seller had disclaimed the implied warranties of merchantability and fitness for a particular purpose may be inconsistent with the purposes and policies of Article 2.

6

consideration means that the promised performance failed. *See* 3 RICHARD A. LORD, WILLISTON ON CONTRACTS § 7:11 (4th ed.), Westlaw (database updated May 2018). Construing the complaint liberally, presuming all factual allegations to be true, and giving Queen City the benefit of all reasonable inferences, a breach of contract has been alleged. A claimed breach does not preclude enforcement of a valid contractual limitation period. *Cf. Harris v. Provident Life & Accident Ins. Co.*, No. E2007-00157-COA-R3-CV, 2008 WL 1901110, at *10 (Tenn. Ct. App. Apr. 30, 2008) ("If [a claimed breach prevented enforcement of a contractual limitations period], then no limitations period in any contract would have any practical effect, since the limitations period is not relevant unless and until someone claims a breach."). We conclude that the contractual limitation period is enforceable. *See Evans*, 334 S.W.2d at 342.

C.

Our conclusion that the contractual limitation period is enforceable does not end our inquiry. We must determine whether the limitation period applied to all of Queen City's claims. The contractual limitation period barred Queen City's claims for breach of contract and warranty. *See Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947) ("[I]t is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period."). But Queen City's complaint also included claims for negligent misrepresentation and violation of the Tennessee Consumer Protection Act ("TCPA").[4] *See* Tenn. Code Ann. § 47-18-104(b)(5), (b)(7) (Supp. 2017).

To determine whether the negligent misrepresentation and the TCPA claims were also subject to the contractual limitation period, we look to the language used in the contract. Contract interpretation is a question of law, which we review de novo with no presumption of correctness. *West v. Shelby Cty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014). The "cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties" as expressed in the plain language of the contract. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006). "The literal meaning of the contract language controls if the language is clear and unambiguous." *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013).

The words used in the terms and conditions — "[a]ny lawsuit against SELLER" — are broad and unrestricted. But the provision appeared under the section entitled

---

[4] In its complaint, Queen City also alleged unjust enrichment, but recovery was only requested if the parties' agreement was rescinded. *See Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) (noting that an unjust enrichment theory is viable only if "there is no contract between the parties or a contract has become unenforceable or invalid").

"Claims and Remedies." Viewing the terms and conditions as a whole, the limitation period extended to any lawsuit against the seller in which the buyer asserted claims and remedies arising out of the sale of goods. *But see Langley v. MP Spring Lake, LLC*, 813 S.E.2d 441, 443-44 (Ga. Ct. App.), *reh'g denied*, (May 15, 2018) (concluding that lease provision requiring "any legal action" against landlord to be filed within one year applied to action for personal injuries sustained by tenant on leased premises).

We conclude that the limitation period applied to Queen City's negligent misrepresentation claim. Queen City alleged that Bakery Technology negligently represented that the oven and related equipment could produce specialty cakes and that it detrimentally relied on that misrepresentation when it paid for the delivered goods. Although labeled as a tort, the true object of this claim is breach of warranty. *See Mid-S. Milling Co. v. Loret Farms, Inc.*, 521 S.W.2d 586, 588-89 (Tenn. 1975) (concluding that the gravamen of the plaintiffs' negligence claim was breach of warranty under the UCC); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992) (concluding that the trial court properly dismissed the plaintiff's negligence claim because the alleged negligent acts involved contract performance); *Perryman v. Peterbilt of Knoxville, Inc.*, 708 S.W.2d 403, 404, 406 (Tenn. Ct. App. 1985) (concluding that allegations that buyer relied to his detriment on seller's representations concerning the quality and fitness of a vehicle should be treated as breach of warranty not tort).

And although a TCPA claim is distinct from a claim under the UCC, *Morris v. Mack's Used Cars*, 824 S.W.2d 538, 539 (Tenn. 1992), the TCPA claim was also properly dismissed as untimely. Queen City alleged Bakery Technology violated the TCPA by misrepresenting the quality or characteristics of the used oven and related equipment. A TCPA claim must be brought within one year from "discovery of the unlawful act or practice." Tenn. Code Ann. § 47-18-110 (2013). And Queen City alleged that it discovered that the oven "was designed primarily for baking cookies and/or crackers, not specialty cakes" after delivery on May 20, 2012. Thus, any claim for violation of the TCPA should have been filed within one year of that discovery. Queen City did not file an action against Bakery Technology until July 30, 2014, over a year too late. *See Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 917-18 (Tenn. Ct. App. 2000) (affirming dismissal of the plaintiffs' negligence and TCPA claims on statute of limitations grounds).

## III.

The limitation period agreed to by Queen City and Bakery Technology was enforceable and applied to all claims arising out of the parties' contract. Because it filed suit more than fifteen months after acceptance of the delivered goods, Queen City's claims for breach of contract, breach of warranty, and negligent misrepresentation were untimely. And because suit was filed more than one year after discovery of the alleged

8

unlawful act or practice, Queen City's TCPA claim was also untimely under that statute. Thus, we affirm the dismissal of the complaint.

_____
W. NEAL McBRAYER, JUDGE